**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| SHERRYWEAR, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23-cv-11599-LTS |
| | ) | |
| v. | ) | Jury Trial Demanded |
| | ) | |
| NIKE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLAINTIFF SHERRYWEAR, LLC'S OPPOSITION
<u>TO DEFENDANT NIKE, INC.'S PARTIAL MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

I.    **INTRODUCTION** ..................................................................................1

II.   **LEGAL STANDARD** ........................................................................3

III. **ARGUMENT**.........................................................................................4

     **A.**  **SherryWear Did Not Construe or Define "Chest Strap" and Is Nevertheless Afforded the Broadest Reasonable Construction** ...................................................4

     **B.**  **SherryWear's Allegations Are Supported by Sufficient Facts**..............................7

          1.  The Court Can Reasonably Infer That NIKE Positions Items into the Bra Pockets ........................................................................7

          2.  NIKE's Materials Reference "Dri-Fit" and "Sweat-Wicking" Technology Which Are Incorporated into the Complaint By Reference ..............................9

     **C.**  **NIKE Failed to Comply with Local Rule 7.1** .......................................................10

IV. **CONCLUSION**....................................................................................11

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                              **Page(s)**

*Attabotics, Inc. v. UBRX, Inc.*,
   No. 1:21-CV-11051-ADB, 2022 WL 1989354 (D. Mass. June 6, 2022) ................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................................3

*Blue Engine Biologics v. Arteriocyte Med. Sys., Inc.*,
   No. 21-CV-11098-DJC, 2022 WL 407409 (D. Mass. Feb. 10, 2022) ..................................7, 8

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ................................................................................................4, 9

*Haley v. City of Boston*,
   657 F.3d 39 (1st Cir. 2011)...................................................................................................4, 10

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012)....................................................................................................5

*Langadinos v. Am. Airlines, Inc.*,
   199 F.3d 68 (1st Cir. 2000).........................................................................................................10

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)....................................................................................................7

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018)...............................................................................................4, 5

*Ocasio-Hernandez v. Fortuno-Burset*,
   640 F.3d 1 (1st Cir. 2011)............................................................................................................3

*Oxygenator Water Techs., Inc. v. Tennant Co.*,
   No. 20-CV-358, 2020 WL 4572062 (D. Minn. Aug. 7, 2020).....................................................7

*Quantum Group, Inc. v. Am. Sensor, Inc.*,
   No. 96 C 0761, 1998 WL 766707 (N.D. Ill. Apr. 10, 1998) ......................................................7

*Rodriguez-Reyes v. Molina-Rodriguez*,
   711 F.3d. 49 (1st Cir. 2013).........................................................................................................4

*Teva Pharm. Int'l. GmbH v. Eli Lilly and Co.*,
   No. 21-CV-10954-ADP, 2022 WL 788667 (D. Mass. Mar. 15, 2022)......................................4

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................................................3

L.R. 7.1(a)(2) ...................................................................................................................10

## I.      INTRODUCTION

SherryWear brought this lawsuit to prevent NIKE's willful direct and indirect infringement of its Pocket Bra Patents. SherryWear and NIKE have a history dating back to at least 2015, whereby SherryWear submitted its patented materials to NIKE's "Idea Submission" platform. Following multiple correspondences between SherryWear and NIKE, and the exchange of various documents, NIKE "passed" on purchasing or licensing SherryWear's Pocket Bra Patents. It appeared that NIKE had no interest in the Pocket Bra, yet approximately seven (7) weeks after "passing," NIKE filed a patent application titled "BRA WITH STORAGE POCKETS"; and, several months thereafter, hired a clothing designer to develop pocket bras. At least as early as January of 2019, NIKE began selling the Infringing Products. Upon becoming aware of NIKE's conduct, SherryWear sent an email to NIKE inquiring into whether it would consider a license— NIKE did not license SherryWear's patents. Over the course of the next several years, moreover, SherryWear formally requested that NIKE cease its infringing activity. Left with no other option, SherryWear initiated this action to protect its technology and hold NIKE accountable for its conduct.

In response to SherryWear's Complaint, and to delay proceedings that will otherwise address its willful infringement, NIKE moves for partial dismissal of SherryWear's Complaint. NIKE's Partial Motion to Dismiss (the "Motion") is based on several false premises. First, NIKE argues that because SherryWear's claim charts include a numerical identifier ("1" with arrows) on a portion of the Infringing Products, SherryWear has construed or defined "chest strap." However, the number "1" references a portion of the chest strap which is not definitive or all encompassing. Even though SherryWear did not construe (let alone define) the phrase "chest strap," SherryWear

is nevertheless afforded the broadest reasonable construction at this stage—claim construction is otherwise left for Markman. Accordingly, courts do not adopt claim construction at the pleading stage, particularly when doing so would result in premature dismissal of an infringement claim.

NIKE's second argument—whether SherryWear alleges facts which plausibly suggest that NIKE positions items into the Infringing Products—must fail. NIKE's own materials depict an item being placed into the pocket of an Infringing Product; specifically, NIKE markets its "Swoosh On The Run" pocket bra as capable of holding an iPhone in the back pocket. With respect to the other Infringing Products, SherryWear provides customer testimonials and company materials which suggest that NIKE inserts items into bra pockets. As such, the Court can reasonably infer that NIKE positions items into the bra pockets of all of the Infringing Products, whether during designing, testing, marketing, etc. Of note, a portion of NIKE's argument ignores the proper standard, specifically where NIKE states that SherryWear *must prove* its infringement allegations.

Next, NIKE argues that SherryWear did not plead sufficient facts to plausibly allege that the Infringing Products contain resilient closed cell polyurethane foam—a limitation of claim 2 of the '016 Patent. NIKE argues that SherryWear restated claim elements and corresponding conclusions, without supporting factual allegations. In making this argument, NIKE points to allegations in the claim chart while ignoring documents and citations. SherryWear's Exhibits, and several websites incorporated by reference, depict NIKE's own materials referencing NIKE's "Dri-Fit" and "sweat-wicking" technology—i.e., technology that NIKE markets as sweat resistant. NIKE's products also reference spandex synthetics. As such, SherryWear alleges, on information and belief, that some of the Infringing Products comprise resilient closed cell polyurethane foam.

Lastly, Nike failed to comply with Local Rule 7.1. NIKE had sixty (60) days from August 22, 2023, after signing a waiver of service, to file its Motion. Under L.R. 7.1(a)(2), in order to certify compliance, NIKE should have attempted to resolve the issues presented in its Motion in good faith. NIKE's counsel waited until the close of business on the deadline date to request a meet and confer. NIKE emailed SherryWear at 4:36 PM EST requesting a response by 5:30 PM EST, providing SherryWear with a fifty-four (54) minute window to meet and confer. After filing the Motion, NIKE's counsel still certified compliance "in accordance with Local Rule 7.1(a)(2);" better yet, NIKE's counsel seeking pro hac vice admission, certified that they had read and intend to comply with the Local Rules. In the meantime, Lead Counsel for SherryWear was in Connecticut on business for the majority of the day and did not reasonably anticipate a last-minute request.

Accordingly, for the reasons stated above, and described in further detail below, SherryWear requests that the Court deny NIKE's Motion. SherryWear also respectfully requests that the Court set an Initial Scheduling Conference so that this lawsuit may proceed without delay.

## II.   LEGAL STANDARD

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled relief." A "short and plain" statement, however, does not need to include detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must allege facts sufficient to state a claim for relief that is plausible on its face. *Id.* at 570. A claim is plausible on its face if, after accepting as true all non-conclusory factual allegations, the court can draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering a determination, a court may look to the facts alleged in the complaint, documents incorporated by reference, and facts susceptible to judicial notice. *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011). Accordingly, dismissal under Rule 12(b)(6) is reserved for "actions that are fatally flawed in their legal premises and destined to fail." *Advanced Cardiovascular Sys. v. Scimed Life Sys., Inc*., 988 F.2d 1157, 1160 (Fed. Cir. 1993).

A plaintiff need not plead facts, moreover, sufficient to prove a prima facie infringement case at the pleading stage. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013). Instead, there must be "some factual allegations, that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Furthermore, at the pleading stage, a court will afford patent claims their broadest possible construction and will not prematurely adopt a defendant's proposed claim construction. *Teva Pharm. Int'l. GmbH v. Eli Lilly and Co.*, No. 21-CV-10954-ADP, 2022 WL 788667, at *4 (D. Mass. Mar. 15, 2022).

## III. ARGUMENT

### A. SherryWear Did Not Construe or Define "Chest Strap" and Is Nevertheless Afforded the Broadest Reasonable Construction

It is not appropriate to resolve claim construction disputes at the pleading stage. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). Rather, courts should consider the broadest reasonable claim construction and refrain from adopting a defendant's construction. *Teva Pharm.*, 2022 WL 788667, at *4. Accordingly, courts should not prematurely adopt proposed claim constructions if doing so would result in the premature dismissal of an infringement claim.

*Id.* (citing *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012)). The Federal Circuit has expressly cautioned against resolving issues of claim construction at the motion to dismiss stage. *Nalco Co.*, 883 F.3d at 1350 (noting that claim construction is not suitable for resolution on a 12(b)(6) motion).

Indeed, NIKE's contention relies on premature claim construction. NIKE argues that SherryWear admits to non-infringement—i.e., by construing the "chest strap" via numerical references in the claim charts. The Asserted Claims of the '551, '878, and '016 Patents require a "side patch on one of an inside or outside surface of the chest strap." Pl.'s Compl. Ex. 7 ('551 Patent), ECF No. 1; *Id.* Ex. 3 ('878 Patent); *Id.* Ex. 2 ('016 Patent). NIKE states that the "Swoosh Bra" and "Swoosh Pocket Bra" have a side patch "above" and not "on" the chest strap. Def.'s Mem. 3, ECF No. 12. NIKE implies that because SherryWear labeled the "chest strap" with the number "1" in its claim charts, "chest strap" is somehow defined by exactly where the "1", and accompanying arrows, are located. SherryWear's claim charts, however, reference a portion of the chest strap similar to how other numerical identifiers direct viewers to a part of the "shoulder straps"; a part of the "cups"; a part of "upper" and "lower edges"; and so forth:



Pl.'s Compl. Ex. 29 at 2; *Id.* Ex. 34 at 2. SherryWear's claim charts clearly assert that the Infringing Products have side pockets "on" the "chest strap," adjacent to the cups, and above the lower band:



Pl.'s Compl. Ex. 34 at 3 (alleging, specifically, "a side patch *on* . . . the chest strap.") (emphasis added). In the claim charts or otherwise, SherryWear has never alleged or depicted the lower band as fully comprising the chest strap—the images and documents in the Complaint are consistent with this notion.

The specifications of the '551, '878, and '016 Patents, moreover, provide that "the chest strap is positionable around the chest and back of a wearer"—nowhere in the specification is "chest strap" limited to NIKE's construction. *See, e.g.*, Pl.'s Compl. Ex. 7 ('551 patent) at Col. 3 Lines 49-50; *Id.* Ex. 3 ('878 patent) at Col. 3 Lines 49-50; *Id.* Ex. 2 ('016 patent) at Col. 3 Lines 50-51. NIKE wrongly suggests, therefore, that the "chest strap" is "an elastic band at the bottom of a [bra]." Def.'s Mem. 3. NIKE's argument is "predicated on the theory that its proposed reading of the claim limitations is the correct one." *Attabotics, Inc. v. UBRX, Inc.*, No. 1:21-CV-11051-ADB, 2022 WL 1989354, at *4 (D. Mass. June 6, 2022). Arguing, however, that SherryWear's numerical

references construe a claim, is an unfounded predication. As such, whether the Court recognizes that (a) SherryWear did not construe the "chest strap" or (b) adopts the broadest reasonable construction, either way, NIKE's contention fails, and the Court should deny its Motion.

### B.   SherryWear's Allegations Are Supported by Sufficient Facts

#### 1.   The Court Can Reasonably Infer That NIKE Positions Items into the Bra Pockets

It is reasonable to infer that a company would conduct internal testing of its products. *Blue Engine Biologics v. Arteriocyte Med. Sys., Inc.*, No. 21-CV-11098-DJC, 2022 WL 407409, at *3 (D. Mass. Feb. 10, 2022) (internal quotations and citations omitted). A plaintiff plausibly pleads infringement by alleging that a defendant uses the accused product in demonstrations that occur as part of its sales process. *Oxygenator Water Techs., Inc. v. Tennant Co.*, No. 20-CV-358, 2020 WL 4572062, at *3 (D. Minn. Aug. 7, 2020). The same is true regarding product demonstrations for customers. *Quantum Group, Inc. v. Am. Sensor, Inc.*, No. 96 C 0761, 1998 WL 766707, at *7 (N.D. Ill. Apr. 10, 1998). It is plausible that a defendant engages in the same conduct as its customers. *Blue Engine Biologics*, 2022 WL 407409 at *3. Further, infringement can be based on one instance of the claimed method being performed. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009).

The matter of *Blue Engine Biologics v. Arteriocyte Med. Sys., Inc.* is persuasive here. In *Blue Engine Biologics*, the plaintiff alleged that the defendant, Arteriocyte Med. Sys., Inc. ("Arteriocyte"), a medical device company, infringed a patent involving compositions of platelet rich plasma for tissue treatment. *Blue Engine Biologics,* 2022 WL 407409, at *2-3. The plaintiff cites Arteriocyte's website and advertising materials whereby Arteriocyte markets a syringe for

use by its patients. *Id.* at 3. Since Arteriocyte designed and then marketed the product for users, the court found it plausible that Arteriocyte may have tested the product or executed the relevant methods during product development. *Id*. The court, therefore, found that Blue Engine had plausibly alleged that Arteriocyte uses the steps claimed in the patent. *Id*. In denying Arteriocyte's motion to dismiss, the Court stated that "it is [] fair and reasonable [to infer] that a company would from time to time conduct internal testing of its product and if its employees did so, then it seems plausible that they would be doing exactly what the customer 'users' are alleged to be doing in the claim charts[.]" *Id.*

Here, the Item Claims require that an item be "[positioned/placed] within" a claimed pocket. Like *Blue Engine Biologics*, SherryWear alleges that NIKE uses the Infringing Products like its customers by placing items into bra pockets. Customer testimonials, for instance, indicate that items are placed into the pockets of all of the Infringing Products. *See*, *e.g.*, Pl.'s Compl. Ex. 30 at 6 ("I can put my phone between my should blades and forget about it . . ."); *Id.* Ex. 37 at 4 ("Gone are the days when you need to strap a running band to your arm or shove your keys, phone, and wallet into [a] sweaty crevice . . . you have a place to store all. the. things"); *Id.* Ex. 38 at 7 ("I cranked my playlist and slipped my Airpod case, phone and keys into [the Swoosh Bra]"). SherryWear also included in its Complaint, images of NIKE's "Swoosh On The Run;" specifically, marketing materials depicting NIKE inserting an item into the "Swoosh On The Run's" back pocket:

8



Pl.'s Compl. Ex. 23 at 6; *Id.* Ex. 25 at 6. By applying the court's rationale in *Blue Engine Biologics*, it is reasonable to infer that NIKE would position items into the pockets of all of the Infringing Products, whether during design, testing, marketing, etc.

In sum, SherryWear's claim charts plausibly allege[1] that Nike uses or has used the Infringing Products in a manner consistent with the Item Claims. The Court should deny NIKE's Motion.

2. NIKE's Materials Reference "Dri-Fit" and "Sweat-Wicking" Technology Which Are Incorporated into the Complaint By Reference

A plaintiff need not reverse engineer a product as a prerequisite to pleading claims of infringement. *See Bot M8*, 4 F.4th at 1357. In assessing plaintiff's claims of infringement, the Court may look to facts alleged in the complaint, documents and exhibits incorporated by

---

[1] NIKE argues an improper standard. NIKE claims that SherryWear must *prove* infringement of the Item Claims. *See* Def. Mem. 6. Specifically, NIKE states that "SherryWear needed to provide factual allegations that, if true, would ***prove*** that Nike makes, sells, offers for sale, or uses the accused bras with an item '[positioned/placed] within' the claimed pocket.") (emphasis added).

reference, and facts susceptible to judicial notice. *Haley,* 657 F.3d at 46. Furthermore, the Court must draw all reasonable inferences derived from the complaint, including from exhibits and documents incorporated therein, in the plaintiff's favor. *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

In its Complaint, SherryWear incorporates various webpages that advertise and sell the Infringing Products. NIKE's webpages contain product information such as the type of fabrics in the Infringing Products; NIKE's "Swoosh Pocket Bra" includes, for instance, a description referencing "Dri-Fit synthetic fabric." SherryWear also incorporates product descriptions in its '016 claim chart, including NIKE's Swoosh Pocket Bra as advertised on Backcountry.com—the website references sweat-wicking technology and fabric specifications. For each Infringing Product, Sherry provides Exhibits containing product details. Pl.'s Compl. Ex.'s 26, 27, 28 & 39. Furthermore, SherryWear references NIKE's "Swoosh On The Run" via DICKSSPORTINGGOODS.COM which states that "Nike Dri-Fit Technology moves sweat away from your skin for quicker evaporation, helping you stay dry and comfortable." SherryWear also incorporates NIKE's website, advertising the "Swoosh on the Run" which refers to "sweat-wicking tech" and "breathable mesh [that] lines the pocket bags to keep you cool and the sweat off your belongings." Pl.'s Compl. 10 n. 3; *Id.* Ex. 26. Based on that information, SherryWear alleges that the cups of the "Swoosh Bra" and "Swoosh Pocket Bra" are made of closed cell polyurethane foam.

## C.    NIKE Failed to Comply with Local Rule 7.1

Pursuant to L.R. 7.1(a)(2), no motion should be filed unless counsel certifies to the court that they have attempted in good faith to meet and confer and resolve the issues presented in the

motion. SherryWear sent NIKE a Waiver of Service of Summons ("Waiver") on August 22, 2023. NIKE returned a signed Waiver on September 1, 2023. NIKE had sixty (60) days from August 22, 2023 to request a meet and confer before filing its Motion. NIKE's counsel nevertheless emailed SherryWear at **4:36 PM ET** on the deadline date: "We intend to file a motion to dismiss SherryWear's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) . . . Please let us know by **5:30 PM ET** whether SherryWear intends to oppose the Motion. We are available to meet and confer any time before **5:45 pm ET**." SherryWear's Lead Counsel was in Connecticut that day and could not have reasonably anticipated a request within twenty-four minutes of the close of business. NIKE's counsel nevertheless certified compliance with Local Rule 7.1(a)(2) stating that "counsel for Defendant attempted to confer with counsel for Plaintiff regarding the relief requested in this motion but counsel for Plaintiff have not yet responded."

Counsel's "attempt," however, must be in good faith and the above underscores their failure to comply.

## IV.   CONCLUSION

WHEREFORE, for the foregoing reasons, SherryWear requests that this Court deny NIKE's Partial Motion to Dismiss and set an Initial Scheduling Conference.

### REQUEST FOR ORAL ARGUMENT

In the event that the Court does not make a decision on the papers, SherryWear respectfully requests that the Court schedule oral arguments pursuant to L.R. 7.1(d).

Dated: November 3, 2023

Respectfully submitted,
**CALDWELL LAW LLC**

/s/ Jameson J. Pasek
Jameson J. Pasek, Esq. (BBO# 692924)
J. Tanner Murphy, Esq. (BBO# 712378)
200 Clarendon Street, 59th Floor
Boston, MA 02116
jameson@caldwelllaw.com
tanner@caldwelllaw.com
(857) 990-4914
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, hereby certify, that on this day, November 3, 2023, this document was filed through the ECF system with copies to be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

/s/ Jameson J. Pasek
Jameson J. Pasek, Esq. (BBO# 692924)